.JAMES P. HALL INCORPORATED COMPANY

*v.*

THE MAYOR AND ALDERMEN OF JERSEY CITY et al.

[Filed November 17th, 1902.]

1. Under "An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performing of any work in public improvements in cities, towns, townships and other municipalities in this state," approved March 30th, 1892 (*Gen. Stat. p. 2078*), where there are divers claims by notices filed under the act, and one of the claimants brings an action to enforce his claim against the fund, only such costs as are incurred in litigating the claims should be awarded against the unsuccessful claimant or claimants.

2. Certain other provisions of that act discussed.

On appeal of William R. Whyte, the Union Stone Company and the Commonwealth Roofing Company from a decree advised by Vice-Chancellor Pitney, whose opinion is reported in *17 Dick. Ch. Rep. 489.*

*Mr. Henry Ewald,* for the appellants.

*Mr. Charles E. Hendrickson, Jr.,* for the respondent.

The opinion of the court was delivered by

COLLINS, J.

This is an appeal from a decree upon a bill filed by the complainant to enforce its claim under "An act to secure the payment of laborers, mechanics, merchants, traders and persons employed upon or furnishing materials toward the performing of any work in public improvements in cities, towns, townships and other municipalities in this state," approved March 30th, 1892 (*Gen. Stat. p. 2078*), against a fund consisting of a balance due from the mayor and aldermen of Jersey City under a contract for the erection of an engine-house.

The defendants were the city, the contractor and divers other claimants against the fund. The decree awarded the entire

fund, less the taxed costs of the city, to the complainant and gave the complainant costs against the other claimants, who have appealed to this court, on the merits of the controversy and also on the question of costs.

The determination in the court below that the complainant was entitled to the entire fund in dispute, less the taxed costs of the city, was correct. The reasons given by the learned vice-chancellor for such determination meet the unanimous approval of this court except in one particular, as to which there is among its members a difference of opinion as to the true interpretation of the following provisions of the act in question:

"SEC. 1. That any person or persons who shall hereafter * * * in pursuance of or in conformity with the terms of any contract for any public improvement, made between any person or persons and any city, * * * for the making of any public improvement, perform any labor or furnish any material toward the performance or completion of any such contract made with said city, * * * on complying with the second section of this act, shall have a lien for the value of such labor or materials or either upon the moneys in the control of the city * * * due or to grow due under said contract with said city * * * to the value of such claim or demand, and these liens may be filed and become an absolute lien to the full and fair value of all such work and materials, to the extent of the amount due or to grow due under said contract in favor of every person or persons who shall be employed or furnish materials to the person or persons with whom the said contract with said city * * * is made, or the subcontractor of said person or persons, their assigns or legal representatives.

"SEC. 2. That any time before the whole work to be performed by the contractor * * * is completed or accepted by said city * * * and within fifteen days after the same is so completed or accepted, any claimant may file * * * notices stating the residence of the claimant, verified by his oath or affirmation, stating the amount claimed, from whom due, and, if not due, when it will be due, giving the amount of the demand after deducting all just credits and offsets, with the name of the person by whom employed, or to whom the materials were furnished; also, a statement of the terms, time given, conditions of his contract and also that the labor was performed or materials were furnished to the said contractor and were actually performed or used in the execution and completion of the said contract with said city * * * but no variance as to the name of the contractor shall affect the validity of the said claim or lien."

There is ambiguity in this language. The learned vice-chancellor was of opinion that the contract intended, particulars of which must, by the requirement of the second section, be stated in the notices of lien, is the contract with the municipality.

Some of the members of this court, including the writer of this opinion, think the contract with the person filing the notices is the one intended; in other words, that the proper grammatical antecedent in the section of the word "his" is the word "claimant" first occurring therein.

The statute is identical with that of April 14th, 1891 (*Gen. Stat. p. 2076*), except in its extension to all municipalities of what was before limited to cities. The original act is a copy of chapter 315 of the laws of 1878 of the State of New York, and is very crude legislation, especially as applied to the policy of this state, and has before now given trouble to our courts. *Delafield Construction Co.* v. *Sayre, 31 Vr. 449.* I have found no New York decision on the point in question, but it is very suggestive that when on May 16th, 1892, a few weeks later than our like extension, the legislature of New York extended the provisions of the act of 1878 to all municipalities, the word *his*, which is the *crux* of the question, was amended so as to read *the*. In that state the Lien law has since been entirely recast. *Laws 1897 ch. 418.*

In the case in hand the successful claimant had sufficiently identified the city contract, and, as the testimony shows that there were no "terms, time given or conditions" of any contract by it or by its assignor with the city's contractor, there were none to be stated. The lien claimed was for materials furnished on orders given day by day, and, subject to a previous quotation of prices, rested entirely on a *quantum valebat*. It is not necessary, therefore, to interpret or construe this ambiguous statute, and, as other controversies involving it may be pending, it would be unwise to do so. For the future, prudent counsel will advise a course that will be safe under either view of the provision, and doubtless, in the pending revision of our statutes, the uncertainty will be remedied.

It may not be improper to add that if, in declaring the relation of the words "their assigns or legal representatives," occurring in the first section of the act, the learned vice-chancellor meant to intimate that the legislature gave any lien except in favor of a person or persons having direct contract relations with the municipality's contractor, his assigns or legal representatives, or standing in the right of a person having such a relation, we do

Hall Co. *v.* Jersey City.

not give our approval to that *dictum.*   Whatever may be the meaning or relation of the word "subcontractor," occurring only in the first section, it seems plain, from the provisions of the statute as a whole, that the lien is given only for work or materials furnished to the contractor with the municipality or, under section 14, to his assigns or legal representatives.

The award of costs against the appellant was, we think, unwarranted.   Section 11 of the act provides that costs "shall be awarded to or against the plaintiff or defendants, or any or either of them, as may be just."   All claimants were necessary parties to the action, and it would be unjust to mulct any or either of them in costs, for no other reason than that notice was given to the city of a just claim that was rendered unavailable merely because either like notices, previously given by other claimants in the same situation, or later notices, given by the favored class of laborers, had created paramount liens.

The costs of the bill, the proceedings to get jurisdiction and the decree are inevitable in any case.   Where a claimant, in the litigation invited, asserts his own claim and unsuccessfully contests that of any other claimant, he should bear the costs of that litigation, but nothing more.   In other words, the expenses he, by his resistance, incurs, including subpœnas and witness' fees incurred by his adversary, should be borne by him, but the normal costs should be paid out of the fund.

The decree therefore in this case is affirmed, except as to the award of costs against the appellants, and the record will be remitted to the court of chancery to have order made in that respect in accordance with this opinion.

The appellants are entitled to costs in this court, but inasmuch as they could have presented the only question on which they prevail by printing, under rule 18, an abridgement of the state of the case at a trifling expense, no costs of printing will be allowed them.

*For affirmance*—The Chief-Justice, Van Syckel, Dixon, Collins, Fort, Garretson, Hendrickson, Bogert, Vredenburgh, Voorhees, Vroom—11.

*For reversal*—None.